**KEASBEY & MATTISON CO. v. ROTHEN-SIES, Collector of Internal Revenue.**
**No. 7985.**

Circuit Court of Appeals, Third Circuit.

Argued July 14, 1942.
Decided Feb. 17, 1943.

Rehearing Denied March 17, 1943.

See, also, 1 F.R.D. 626.

Kenneth W. Gemmill, of Philadelphia, Pa. (Carroll R. Wetzel and Barnes, Dechert, Price and Smith, all of Philadelphia, Pa., on the brief), for appellant.

William B. Waldo, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Gerald L. Wallace, Sp. Assts. to Atty. Gen., and Gerald A. Gleeson, U. S. Atty., and T. J. Curtin, Asst. U. S. Atty., both of Philadelphia, Pa., on the brief), for appellee.

Before MARIS and JONES, Circuit Judges, and SMITH, District Judge.

SMITH, District Judge.

This was a suit against the Collector of Internal Revenue for the recovery of income and excess-profits taxes alleged to have been unlawfully collected under the Revenue Act of 1936. The court below entered judgment in favor of the defendant and against the plaintiff. The case is here on an appeal from the said judgment. The sole question presented for determination is whether a tax paid to the Province of Quebec, under the facts hereinafter summarized, was an "income tax" within the meaning of Section 131(a) (1) of the said Act, 26 U.S.C.A. Int.Rev.Acts, page 880 so as to entitle the taxpayer to a credit against income taxes for the taxable year in question, the fiscal year ending March 31, 1937. The question appears to be one of novel impression.

The taxpayer, a corporation of the Commonwealth of Pennsylvania, owned and operated asbestos mines (quarries) in the Province of Quebec, and, as required by the Quebec Mining Act (15 Geo. V, Ch. 37) and the Amendments thereof, the pertinent provisions of which are recited in the footnote,[1] paid to the said Province in the said fiscal year a tax in the amount

[1] Quebec Mining Act
R. S. (1909), 2098.
Division I
Declaratory and Interpretative
16. The word "output" includes the mineral-bearing substances coming from the mine such as those sold, removed or placed upon the market, including therein those treated or partially treated at any smelter or mill forming part of the works.
17. The words "gross value of the year's output" means the real value of the ore and minerals at the ruling market prices at the time of their sale or of their use, and, in case of doubt, the representatives of the Department of Colonization, Mines and Fisheries may themselves make an estimate of the value of the ores or minerals sold, utilized or shipped by the operators, and such estimate shall be final to establish the gross value. * * *
Division III
Duties on Mines
11. There shall be paid to the Crown, at the time and in the manner hereinafter provided, the duties imposed by this division.
* * * R.S. (1909), 2105, 15 Geo. V, Ch. 37, Section 2.
12. (1) From and after the first of January, 1935, every mine in the Province of Quebec shall be liable for, and the owner, manager, holder, lessee, occupant, or operator of the mine shall pay, the following duties:
a. Upon annual profits in excess of $10,-000.00 up to $1,000,000......4%;
* * * R. S. (1909), 2105(a), 15 Geo. V, Ch. 37, Section 2.
13. The annual profits shall be ascertained and fixed in the following manner:
From the gross value of the year's output, sold, utilized or shipped during the year there shall be deducted the costs of operation and expenses incurred during the year in question, to wit:
(1) The cost of transportation of the output of the mine, if such cost is borne by the operator, owner, occupant or lessee;

of $10,072.26. The taxpayer, as required by the Revenue Act of 1936, filed its in- come and excess-profits tax return for the said fiscal year, and therein applied the

(2) The working expenses of the mine, including the salaries and the wages of the workmen and employees of the mine, mills and plant, but exclusive of other salaries or wages;

(3) The cost of the necessary power and light for the operation of the mine, mills and plant;

(4) The cost of explosives, fuel and any other supplies used in the mining opera- tions and in the treatment of the minerals by the operator;

(5) The cost of insurance upon the equipment, the buildings at the mine and the stock in storage;

(6) An annual amount, based upon the probable annual average cost of repairs and renewals necessary to maintain oper- ations in a condition of efficiency, to cov- er the depreciation due to ordinary wear and tear of the buildings and equipment, provided, however, that such amount shall, not exceed fifteen per cent of the value of same at the commencement of the year, as appraised by an assessor appointed by the Minister;

(7) The cost of work performed during the year in sinking shafts, making excava- tions and workings and trenching, in or upon the mining property, with a view to opening up or testing for minerals. R. S. (1909), 2105(b), 15 Geo. V, Ch. 37, Section 2.

14. No allowance or deduction shall be made for the cost of new installations or new buildings made or erected during the year, nor for depreciation in the val- ue of the mine, by reason of exhaustion or partial exhaustion of minerals, due to the mining thereof. R. S. (1909), 2105 (c), 15 Geo. V, Ch. 37, Section 2.

15. (1) On or before the 1st of March, in each year, every owner, manager, hold- er, lessee, occupant or operator, liable for the aforesaid duties, shall send to the Minister a sworn statement, furnishing the details hereinafter enumerated, for the year ending on the 31st of December last preceding, to wit:

a. * * *

b. * * *

c. The quantity of minerals and miner- al-bearing substances sent from or treat- ed on the mining premises during the year ending on the 31st of December last pre- ceding;

d. The name or names of the smelter or mill and locality, where the minerals or mineral-bearing substances were treated;

e. The cost per ton for transportation of minerals or mineral-bearing substances to the smelter, refinery or mill, as well as the expenses incurred for, effecting the sale thereof;

f. The cost per ton for smelter or mill charges, and by whom paid or borne;

g. The quantity of minerals and miner- al-bearing substances treated on the min- ing premises during the year;

h. The gross value, at the mine, of the minerals and mineral-bearing substances produced;

i. The value of the minerals and min- eral-bearing substances sold, after de- ducting the charges for effecting the sale thereof and for transportation and treat- ment;

j. The value of minerals and mineral- bearing substances treated on the min- ing premises.

Such statement shall also indicate in other columns the various costs and ex- penses which are allowed to be deducted under Section 13 so as to show the total receipts for the year's output, the total amount of expenses to be deducted, and the total amount of profits for the year.

(2) * * * R. S. (1909), 2105(d), 15 Geo. V, Ch. 37, Section 2.

17. The Minister may, when there is occasion therefor, appoint one or more em- ployees who shall be considered as officers of the Department of Colonization, Mines and Fisheries, and it shall be their duty, subject to the direction of the Minister, to prepare annually, or oftener if so re- quired, lists and descriptions of, and to ascertain and report the facts and par- ticulars concerning all the mines, min- ing rights and mining properties, liable or which might become liable to the duties upon mines imposed under this division, which lists and descriptions must con- tain all the facts and particulars respect- ing such mines, and to furnish copies thereof to the Department of Colonization, Mines and Fisheries, and to make such in- vestigations and perform such duties as may be assigned by the Minister as pro- vided under this division. R. S. (1909), 2105 (f), 15 Geo. V, Ch. 37, Section 2.

19. After the receipt by the Minister of the returns and statements mentioned in Section 15, the inspector of mines shall prepare a list showing all the mines and persons liable for the duties, the quantity and value of the output of each mine or smelter, the amount of deductions there- from as operating expenses, the amount of the profits liable for the duties, and the amount of the duties payable by each per- son; and a notice thereof shall be giv- en to such person at least fifteen days before the date fixed for payment. R. S. (1909), 2105(h), 15 Geo. V, Ch. 37, Sec- tion 2.

tax paid the Province of Quebec as a credit against the income taxes due and payable for the said year. The Commissioner of Internal Revenue, upon an examination of the return and a determination of the income and excess profits taxes due and payable, disallowed the tax paid the Province of Quebec as a credit against income and excess profits taxes, allowed it as a deduction from gross income, and accordingly assessed a deficiency, which was paid. The taxpayer duly filed with the Collector of Internal Revenue a claim for refund which the Commissioner of Internal Revenue disallowed. This suit followed.

The pertinent provisions of Section 131 (a) (1) of the Internal Revenue Act of 1936, upon which the asserted right to a credit rests, read as follows:

"§ 131. Taxes of Foreign Countries and Possessions of United States

"(a) Allowance of credit. If the taxpayer signifies in his return his desire to have the benefits of this section, the tax imposed by this title shall be credited with:

"(1) Citizen and domestic corporation In the case of a citizen of the United States and of a domestic corporation, the amount of any income, war-profits, and excess-profits taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States; and"

It is conceded that in the application of the statute the criteria prescribed by our revenue laws are determinative of the meaning of the term "income taxes" as used therein. Biddle v. Commissioner of Internal Revenue, 302 U.S. 573, 58 S.Ct. 379, 82 L.Ed. 431. Cf. Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77 L.Ed. 199.

■ It necessarily follows that a tax paid a foreign country is not an income tax within the meaning of Section 131(a) (1) of the Act unless it conforms in its substantive elements to the criteria established under our revenue laws. These commonly accepted criteria, although not defined in the statute, may be easily ascertained. It is clear from a reading of the Act, as well as the revenue acts which preceded it, and the cases interpretive of its provisions, that an income tax is a direct tax upon income as therein defined. Brushaber v. Union Pacific R. Co., 240 U.S. 1, 36 S.Ct. 236, 60 L.Ed. 493, L.R.A.1917D, 414, Ann.Cas. 1917B, 713; Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570; and, other cases hereinafter cited. The defined concept of income has been uniformly restricted to a gain realized or a profit derived from capital, labor, or both. Section 22(a) of the Internal Revenue Act of 1936, 26 U.S.C.A. Int.Rev. Acts, page 825; Helvering v. Bruun, 309 U.S. 461, 60 S.Ct. 631, 84 L.Ed. 864; United States v. Safety Car Heating Co., 297 U.S. 88, 56 S.Ct. 353, 80 L.Ed. 500; Douglas v. Willcuts, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3, 101 A.L.R. 391; United States v. Kirby Lumber Co., 284 U.S. 1, 52 S.Ct. 4, 76 L.Ed. 131; Burnet v. Wells, 289 U.S. 670, 53 S.Ct. 761, 77 L.Ed. 1439; Corliss v. Bowers, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916; Miles v. Safe Deposit & Trust Co., 259 U.S. 247, 42 S.Ct. 483, 66 L.Ed. 923; Eisner v. Macomber, supra; Lynch v. Hornby, 247 U.S. 339, 38 S.Ct. 543, 62 L.Ed. 1149; Southern Pac. Co. v. Lowe, 247 U.S. 330, 38 S.Ct. 540, 62 L.Ed. 1142; MacLaughlin v. Harr, 3 Cir., 99 F.2d 638. It seems logical to conclude that any tax, if it is to qualify as a tax on income within the meaning of Section 131 (a) (1), is subject to the same basic restrictions. The Supreme Court, without advancing any precise definition of the term "income tax", has unmistakably determined that taxes imposed on subjects other than income, e.g., franchises, privileges, etc., are not income taxes, although measured on the basis of income. Stratton's Independence, Ltd., v. Howbert, 231 U.S. 399, 34 S.Ct. 136, 58 L.Ed. 285; McCoach v. Minehill & S. H. R. Co., 228 U.S. 295, 33 S.Ct. 419, 57 L.Ed. 842; Flint v. Stone Tracy Co., 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389, Ann.Cas.1912B, 1312; Spreckels Sugar Refining Co. v. McClain, 192 U.S. 397, 24 S.Ct. 376, 48 L.Ed. 496; see: Doyle v. Mitchell Bros. Co., 247 U.S. 179, 183, 38 S.Ct. 467, 62 L.Ed. 1054; United States v. Whitridge, 231 U.S. 144, 147, 34 S.Ct. 24, 58 L.Ed. 159. These criteria are determinative of the nature of the tax in question.

■ It is the opinion of the Court that the tax imposed by the Quebec Mining Act is not an income tax within the meaning of Section 131(a) (1) of the Revenue Act of 1936. The term "income taxes" as used therein is not sufficiently broad to embrace the tax in question. The Quebec Mining

Act is not free from ambiguity; there are clauses which, when considered apart from their context, may occasion conflicting views. However, when the statute is considered in its entirety, as it must be, and the nature of the tax is thus ascertained, it seems apparent that the tax, although designated therein as a tax on "annual profits," is in reality a tax upon the mining privilege measured on the basis of "gross value" of the output determined under a prescribed formula, less allowable deductions. It is significant that the allowable deductions are restricted to the costs actually incurred in the mining operation and nothing more. The expenses incident to the general conduct of the business, as distinguished from the costs incurred in the mining operation, are not deductible. It is clear that the mining privilege is the subject of the tax and the value of the output the basis of the levy, independent of either realization of gain or derivation of profit. Cf. Hope Natural Gas Co. v. Hall, 274 U.S. 284, 47 S.Ct. 639, 71 L.Ed. 1049; Oliver Iron Mining Co. v. Lord et al., 262 U.S. 172, 43 S.Ct. 526, 67 L.Ed. 929. The substantive elements of the tax under consideration conform, not to the recognized criteria of an income tax, but, to the accepted standards of an excise tax.

■ Section 131 of the Revenue Act of 1936 has been amended by Section 158 of the Revenue Act of 1942, approved October 21, 1942, 26 U.S.C.A. Int.Rev.Acts. The amendment, although not applicable in the instant case, is not without significance. The pertinent and significant provisions of the amendment[2] extend the applicability of the said section so as to include "a tax paid in lieu of a tax upon income." If any doubt existed as to the limited application of the prior act this subsequent enactment would seem to remove it. The subsequent enactment, although not conclusive, is at least presumptive evidence that Congress recognized that the prior act was of limited application. Higgins v. Smith, 308 U.S. 473, 480, 60 S.Ct. 355, 84 L.Ed. 406; First National Bank v. Missouri, 263 U.S. 640, 658, 44 S.Ct. 213, 68 L.Ed. 486; Swigart v. Baker, 229 U.S. 187, 33 S.Ct. 645, 57 L.Ed. 1143; Cotonificio Bustese, S. A. v. Morgenthau, 74 App.D.C. 13, 121 F.2d 884, 888; Mackay et al. v. Commissioner of Internal Revenue, 2 Cir., 94 F.2d 558, 561; Walker v. United States, 8 Cir., 83 F.2d 103, 106; Felin v. Kyle, D. C., 22 F.Supp. 556, 559, affirmed 3 Cir., 102 F.2d 349.

■ The privilege accorded the taxpayer under Section 131(a) (1) of the Act is an exemption from taxation to the extent of the tax paid the foreign country. It is well established that exemption from taxation is dependent upon legislative grace, and where, as here, the taxpayer seeks to avail himself of such exemption, he must bring himself within the statutory provisions upon which he relies. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348; Ozark Chemical Co. v. Jones, 10 Cir., 125 F.2d 1; Hirsch et al. v. Commissioner of Internal Revenue, 9 Cir., 124 F.2d 24; Commissioner of Internal Revenue v. Upjohn's Estate et al., 6 Cir., 124 F.2d 73; A. Giurlani & Bro., Inc., v. Commissioner of Internal Revenue, 9 Cir., 119 F.2d 852. The statute invoked must be strictly construed and may not be extended by implication beyond the clear import of its language. United States v. Stewart, 311 U.S. 60, 61 S.Ct. 102, 85 L.Ed. 40; United States Trust Company v. Helvering, 307 U.S. 57, 59 S. Ct. 692, 83 L.Ed. 1104. The arguments advanced by the present taxpayer could not be adopted without violation of these fundamental principles.

The judgment of the District Court is affirmed.

---

2 "(f) Credit for taxes in lieu of income, etc., taxes. Section 131 (relating to credit for taxes of foreign countries and possessions of the United States) is amended by inserting at the end thereof the following new subsection:

"'(h) Credit for taxes in lieu of income, etc., taxes. For the purposes of this section and section 23(c) (1), the term "income, war-profits, and excess-profits taxes" shall include a tax paid in lieu of a tax upon income, war-profits, or excess-profits otherwise generally imposed by any foreign country or by any possession of the United States.' "