**H. H. ROBERTSON CO. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 9637.

United States Court of Appeals Third Circuit.

Argued May 19, 1949.

Decided Aug. 31, 1949.

---

Appeal from Tax Court.

Sidney B. Gambill, Pittsburgh, Pa. (W. A. Seifert, William Wallace Booth, Norman D. Keller, Pittsburgh, Pa., Reed, Smith, Shaw & McClay Pittsburgh, Pa., on the brief) for petitioner.

Carlton Fox, Washington, D. C. (Theron Lamar Caudle, Assistant Attorney General, Ellis N. Slack, Special Assistant to the Attorney General, on the brief) for respondent.

Before McLAUGHLIN, O'CONNELL and KALODNER, Circuit Judges.

O'CONNELL, Circuit Judge.

Taxpayer ("Robertson") is a Pennsylvania corporation, on an accrual tax basis, which has manufactured and sold building material products in both the United States and Great Britain. The instant controversy centers around the proper interpretation and application of sections 131 and 729 of the Internal Revenue Code, 26 U.S. C.A. §§ 131, 729, to the federal tax liability of Robertson for the year 1940.[1] In sub-

---

[1] The two provisions primarily here involved are section 131(c), which has remained substantially unchanged since it was first enacted in 1918, and its companionate provision governing excess profits taxes, section 729(c), which was added by the Second Revenue Act of 1940. They read as follows:

"Sec. 131. Taxes of foreign countries * * *.

"(c) Adjustments on payment of accrued taxes. If accrued taxes when paid differ from the amounts claimed as credits by the taxpayer, or if any tax paid is refunded in whole or in part, the tax-payer shall notify the Commissioner, who shall redetermine the amount of the tax for the year or years affected, and the amount of tax due upon such redetermination, if any, shall be paid by the taxpayer upon notice and demand by the collector, or the amount of tax overpaid, if any, shall be credited or refunded to the taxpayer in accordance with the provisions of section 322. * * *" 26 U.S.C.A.1924 to Date, Act of 1938, § 131(c), p. 1069.

"§ 729. * * *

"(c) Foreign taxes paid. In the application of section 131 for the purposes

stance, the question we are called upon to decide is whether, under the provisions of section 131(c) of the Internal Revenue Code, the tax "refunded * * * in part" to Robertson by the British government is to be (1) the gross amount to which Robertson was entitled by one provision of the British tax statute, or (2) the net amount which Robertson in fact received, smaller, than the gross amount because another provision of the same British statute imposed an income tax upon the gross sum purportedly refunded.[2]

Briefly, the facts as disclosed by the record and stipulation of the parties are substantially as follows:[3] In 1940, Robertson had a net income of two million dollars, two-thirds of which was earned in Great Britain. Robertson paid $1,110,000 to Great Britain in income and excess profits taxes for that year,[4] and claimed appropriate credit therefor in its United States 1940 tax returns. In three subsequent years—1942, 1944, and 1945—Robertson earned less than the "standard profits" which, under the British statute, were the determinant of whether a taxpayer became liable for the British excess profits tax or became entitled to a refund by Great Britain of excess profits taxes previously paid to that country. The gross refunds to which Robertson was theoretically entitled for those three years, because of its diminished profits, amounted to $850,000. With Robertson here acceding,[5] the Commissioner has made, and the Tax Court has approved of, an allocation of those gross re-

funds, so that slightly more than half—$457,923.48, to be exact—is attributable to the excess profits taxes paid Great Britain for 1940, the remainder being for the years 1941 and 1943.

Had Robertson actually received unqualifiedly the $457,923.48 from the British government, all would now agree that the recomputation of the 1940 federal tax liability of Robertson was properly based upon that figure. Robertson, however, points out that Great Britain imposed what was designated as an income tax on the refunds, so that of the $850,000 to which Robertson was presumably entitled it actually received only about 52%, $449,444.54 being the precise sum.[6] The question is whether the tax credit which Robertson originally could and did claim in its domestic tax return for the year 1940 is to be diminished on the basis of the $457,923.48 gross refund to which it was entitled before imposition of the British income tax on that refund, or by the lesser amount, about half that figure, which Robertson in fact received. The Tax Court has held that the gross sum must be used. 1947, 8 T.C. 1333. That result, of course, means that the credit allowed Robertson under sections 131 and 729 of the Internal Revenue Code is smaller and the Robertson 1940 domestic tax deficiency is greater.[7]

Section 131, quoted in footnote 1, supra, reads, "if any tax paid is refunded in whole or in part * * *." This clause obviously governs decision of the issue at bar,

of this subchapter the tax paid or accrued to any country shall be deemed to be the amount of such tax reduced by the amount of the credit allowed with respect to such tax against the tax imposed by Chapter 1." 26 U.S.C.A. Beginning 1940, Act of 1940, § 729(c), p. 38.

[2] The respective provisions of the British statute were sections 15 and 18, ch. 109, Finance (No. 2) Act 1939, 2 & 3 Geo. 6.

[3] Unless otherwise specified, we shall use approximations, rather than the exact figures, throughout this opinion; and, when we speak of the "tax return" of Robertson, we shall be referring to the 1940 United States tax returns filed with the Commissioner of Internal Revenue.

[4] Between April of 1940 and December,

1945, the British excess profits tax was 100%.

[5] In the Tax Court, Robertson had argued that all three refunds should be applied against the 1940 tax return instead of being allocated to 1940, 1941, and 1943 returns.

[6] The British income tax for 1942 and 1944 was 50%, while that for 1945 was 45%. The sum of $449,444.54 received by Robertson as refunds for the three years is, of course, only coincidentally similar in amount to the $457,923.48 gross refund allocated to 1940.

[7] As to 1940, the Tax Court found a "deficiency in declared value excess-profits tax of $91,596.01 and a deficiency in excess profits tax of $149,441.92."

which, as the Tax Court noted, appears to be one of first impression.

■ Little aid is to be derived from the Treasury regulations, section 29.131-4 of which is couched in virtually the same language.[8] What we can readily gain from the combination of the statute and the regulation, however, is that the words "tax paid" mean the money which the taxpayer had initially turned over to the foreign government and for which credit was allowed. Thus, as applied to the facts before us, the "tax paid" was the $1,110,000 Robertson surrendered to Great Britain for 1940, and cannot mean any smaller amount which would reflect subsequent refunds. Robertson does not seriously question this interpretation of the word "paid."

The difference arises from the phrase "refunded * * * in part." Robertson takes the position that what the British statute may or may not say is of no materiality in determining the amount of credit under the provisions of the Internal Revenue Code, and that the sum "refunded" within the meaning of section 131 is the *net* repayment; i. e., what remained after the British income tax on the gross refund was deducted. On the other hand, the Commissioner insists that we look to the British statute to ascertain what was refunded.

If the Commissioner's position that reference be made to British law be correct, there can be little doubt that the Robertson appeal must fail; for the British statute specifically provides that " * * * where * * * relief is given by way of repayment from excess profits tax chargeable for any chargeable accounting period previous to that in which the deficiency occurs, *the amount of the deduction allowed under this section shall not be altered* but the amount repayable shall be taken into account in computing the profits and gains of the trade or business for the purposes of income tax as if it were a profit of the trade or business accruing in the chargeable accounting period in which the deficiency occurs." (Emphasis added.) Par.

(1), sec. 18, ch. 109, Finance (No. 2) Act, 1939, 2 & 3 Geo. 6. In other words, under British law it is unequivocally set forth that the income tax imposed upon the gross refund is not to be viewed as altering the amount of that refund.

■ Our attention has been called to no way in which Robertson can avoid reference to the British statute. Robertson made its choice when it claimed the 1940 payment of $1,110,000 as credit. If the British statute imposed the kind of tax recognized for credit under section 131—and this is not questioned—that statute likewise determined what the amount of the tax would be, and provided for payment in 1940 of what was effectually an estimated tax subject to later calculation and modification in amount. Solely within the discretion and power of the British lawmakers did it lie to decide what refund, if any, would be given persons who had paid excess profits taxes. Those legislators adopted the course of making full refund on the basis of "standard profits." The rebate of British excess profits tax was an entirely separate transaction from that imposing an income levy on the rebate, and was grounded upon a distinctly separate section of the British statute. Had the British official charged with the function of issuing such statements been instructed to certify to the amount of British taxes paid by Robertson *for 1940,* of necessity he would have been compelled to ignore the 1942, 1944, and 1945 income taxes paid by Robertson on the refund. It is appropriate to apply the standard of this country to determine whether or not the foreign tax levied is within the cognizance of section 131, see Keasbey & Mattison Co. v. Rothensies, 3 Cir., 1943, 133 F.2d 894, 897, certiorari denied 1943, 320 U.S. 739, 64 S.Ct. 39, 88 L.Ed. 438, and who is paying the tax, Biddle v. Commissioner, 1938, 302 U.S. 573, 58 S.Ct. 379, 82 L.Ed. 431; but, once the tax is found to meet the requirements of section 131 of the Internal Revenue Code, the taxpayer must accept the results of the application of such foreign tax law, both for the purposes of as-

[8] "* * * in case any tax payment credited is refunded in whole or in part, the taxpayer shall immediately notify the Commissioner. * * *" Reg. 111, sec. 29.131-4; 493 C.C.H. Standard Fed. Tax Rep. § 967.

certaining that the refund was a repayment (rather than a gift, for instance) and was *x* dollars in gross amount, as well as for determining the factor diminishing the amount actually received by the taxpayer. Cf. New York & Honduras Rosario Min. Co. v. Commissioner, 2 Cir., 1948, 168 F.2d 745, 749.

We appreciate that a tax refund normally is not subject to the federal income tax, 26 U.S.C.A. § 22(b) (12); but cf. Rothensies v. Electric Storage Battery Co., 1946, 329 U.S. 296, 298, 67 S.Ct. 271, 91 L.Ed. 296. What does and what does not constitute income is largely a question for the legislative branch; for example, the receipt of alimony under certain circumstances is taxable as income today when it was not so considered prior to 1942, 26 U.S.C.A. § 22(k), and ministers of the gospel are accorded special tax treatment by section 22(b) (6) of the Code. It seems to us fairly clear that, if our own Code taxed as income refunds like those authorized by the British statute, there would be no ground for any assertion that such domestic income tax was a segment of the excess profits tax levied in the earlier year by the British government. Therein, we believe, lies the real difficulty in the Robertson position; for the assessment upon the refund in later years in fact was not, and could not be, a part of the 1940 British tax.

It thus becomes apparent that the gravamen of the Robertson objections, and that which has been stressed in the Robertson briefs and oral argument, is the thought that Robertson is being exposed to what it terms "double taxation," i. e., that, having paid the $1,110,000 taxes to Britain in 1940 and having paid the United States whatever was due on the basis of that tax credit, Robertson should accordingly be permitted to discharge its 1940 domestic tax deficiency by turning over to the Unit-

ed States its *net* refund from Great Britain. Robertson cannot, however, justifiably characterize itself as a victim of overlapping taxation unless the Commissioner were to deny Robertson credit in its 1942, 1944, and 1945 domestic tax returns for its British income tax payments upon the refund,[9] and unless no other form of relief were available—in which event the so-called "double taxation" may exist for those years, but *not* for 1940. The question which a denial of credit for the income tax payments in 1942, 1944, and 1945 would present is not before us on this appeal; so we express no opinion on the matter at this time. What cannot be escaped is that the 1940 payment of $1,110,000 to Great Britain in effect was an estimate of the amount due, and that the commensurate credit granted Robertson in its 1940 domestic tax return was likewise an estimate. As finally determined, the Robertson 1940 British tax should have been $654,103.15.[10] The $457,923.48 refund was granted Robertson and had to be reported to the Commissioner as such for recomputation of the domestic 1940 tax. Thus, in truth, what Robertson did not have to pay the British government by virtue of the adjusted British tax liability for 1940 is a sum due the United States which Robertson was previously excused from paying, see Pacific Metals Corporation v. Com'r, 1943, 1 T.C. 1028, 1030; and Robertson is not for 1940 being subjected to an overlapping tax, but is merely paying the balance of its 1940 indebtedness under the Code to the United States, because Great Britain no longer asserts that the $457,923.48 was due as excess profits tax in that year.

The conclusion is inescapable, therefore, that the Tax Court properly denied Robertson credit in its 1940 tax return for the British income levy on tax rebates in the later years. The decision of the Tax Court must accordingly be affirmed.

---

[9] But cf. Special Ruling Treasury Dept., by E. J. McLarney, dated February 14, 1947, 474 C.C.H. Standard Fed. Tax Rep. § 6104.

[10] The precise amount of 1940 British tax paid by Robertson was $1,112,026.63. Subtracting the $457,923.48 refund, we arrive at the figure of $654,103.15.