ESTATE OF CLAIRE M. BALLARD, DECEASED, SHIRLEY A. WEBSTER, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 32658–83.     Filed August 20, 1985.

*G. Stephen Walters* and *Shirley A. Webster*, for the petitioner.

*Bruce W. Baker*, for the respondent.

## OPINION

DAWSON, *Judge*: Respondent determined a deficiency in petitioner's Federal estate tax in the amount of $17,931. Two issues are presented for decision: (1) Whether the tax paid by petitioner to Canada is an estate tax for which a credit is allowable under section 2014(a);[1] and (2) whether the tax paid

[1]All section references are to the Internal Revenue Code of 1954 as amended and in effect at the time of Claire M. Ballard's death on Feb. 25, 1980, unless otherwise indicated.

by petitioner to Canada is a tax of substantially similar character to the estate tax imposed by Canada at the time the United States-Canada Estate Tax Convention, Feb. 17, 1961, 13 U.S.T. 382, T.I.A.S. No. 4995, was adopted, and, therefore, is a creditable tax pursuant to the Convention.

This case was submitted fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts and the attached exhibits are incorporated herein by this reference. The pertinent facts are summarized below.

Claire M. Ballard (decedent) died on February 25, 1980. He was a U.S. citizen, domiciled in and a resident of Madison County, Iowa, at the time of his death. Shirley A. Webster was appointed executor of decedent's estate. At the time the petition was filed, Shirley A. Webster was a resident of Winterset, Iowa.

At the time of his death, decedent owned land in Stettler County, Alberta, Canada (Alberta property). The Alberta property had been owned by decedent for more than 20 years. The land was rented through decedent's agent primarily on a crop share basis to approximately a dozen different tenants. Decedent did not take an active part in the rental of the Alberta property.

Pursuant to the applicable Canadian tax statute, Revenue Canada originally assessed decedent's estate the sum of Can$404,586.75 (Canadian dollars) in tax on Canadian property owned by the decedent on the date of his death. The Canadian property included the Alberta property as well as mineral rights owned by the decedent on the Alberta property on the date of his death.

The Can$404,586.75 Canadian tax assessment was computed on the difference between the value of decedent's Canadian property on the date of his death and the value of such property as of January 1, 1972. For Canadian tax purposes, decedent's Alberta property had a value of Can$1,455,000 on the date of his death and an adjusted cost base[2] of Can$313,550. Under Canadian law, one-half, or Can$570,725, of the resulting gain of Can$1,141,450 was taxable. In addition, under Canadian law, the mineral rights on the Alberta property had a taxable gain of Can$69,619. The total taxable

---

[2] Adjusted cost base is analogous to the U.S. concept of adjusted basis. See secs. 53 and 54(a), Canadian Income Tax Act of 1971, ch. 63, Can. Stat. (1970–71–72), as amended.

gain was subject to Canada's graduated income tax rates for individuals, resulting in a total Canadian tax of Can$404,586.75, which petitioner paid to Revenue Canada in November 1980.

On November 24, 1980, respondent received petitioner's Federal estate tax return on which petitioner claimed a foreign death tax credit based upon the total Canadian tax paid to Canada. Respondent disallowed the credit and instead allowed petitioner a deduction under section 2053 for the Canadian tax paid.

Petitioner subsequently filed a protest with Revenue Canada, contending that decedent did not maintain a permanent establishment in Canada and that article VIII of the United States-Canada Income Tax Convention, Mar. 4, 1942, 56 Stat. 1399, T.S. No. 983, as supplemented (Income Tax Convention), exempts from Canadian income tax gains from the sales or exchanges of capital assets where a U.S. resident has no permanent establishment in Canada. Consequently, petitioner requested a full refund of the previously paid Canadian taxes. Although Revenue Canada agreed that decedent did not maintain a permanent establishment in Canada, it concluded that article VIII of the Income Tax Convention was not applicable. Revenue Canada found that the term "sale or exchange" of capital assets, as used in article VIII, does not include deemed dispositions of property resulting from the owner's death. Instead, Revenue Canada applied article XI of the Income Tax Convention, which subjects individuals to a reduced rate of 15 percent with respect to income other than earned income from sources within Canada. In February 1983, Revenue Canada refunded to petitioner Can$302,020.50. As a result of the refund, respondent disallowed a portion of the previously allowed section 2053 deduction and determined additional Federal estate tax, which petitioner paid.

Petitioner filed a claim for refund with the Internal Revenue Service in August 1983, seeking a refund of Can$17,135 in estate tax. The claim was based upon respondent's disallowance of the credit for foreign death taxes originally claimed on petitioner's estate tax return. Respondent sent to petitioner a notice of deficiency dated September 6, 1983. The notice of deficiency disallowed the previously allowed section 2053 deduction of $101,304 for Canadian tax paid, pending the final

resolution of any appeal by petitioner of Revenue Canada's determination, which was confirmed by the Minister of National Revenue.

The period for filing an appeal of Revenue Canada's determination expired without an appeal being filed. As a result of the expiration of this period, respondent conceded in his answer that petitioner is entitled to a deduction of $101,304 for Canadian tax paid and, hence, that there is no deficiency in estate tax. Respondent disputes, however, that petitioner is entitled to a credit for the tax paid to Canada and, therefore, that an overpayment exists. Thus the issues remaining for decision pertain only to petitioner's claim that it is entitled to a credit for the foreign taxes paid.

### Issue (1) Section 2014(a)

The parties disagree as to whether the tax imposed by Canada is an estate tax within the meaning of section 2014(a).[3] Respondent's position is set forth in Rev. Rul. 82–82, 1982–1 C.B. 127. Section 2014 provides, in part, as follows:

SEC. 2014. CREDIT FOR FOREIGN DEATH TAXES.

(a) IN GENERAL.—The tax imposed by section 2001 shall be credited with the amount of any estate, inheritance, legacy, or succession taxes actually paid to any foreign country in respect of any property situated within such foreign country and included in the gross estate * * *

In *Biddle v. Commissioner*, 302 U.S. 573 (1938), one issue was whether certain amounts paid by the taxpayers to the United Kingdom were foreign income taxes and therefore eligible to be used by the taxpayers as a foreign tax credit against their Federal income taxes. The Supreme Court held that this issue must ultimately be determined under U.S. tax concepts and not by reference to foreign tax concepts. The Court stated as follows:

At the outset it is to be observed that decision must turn on the precise meaning of the words in the statute which grants to the citizen taxpayer a credit for foreign "income taxes paid." The power to tax and to grant the credit resides in Congress, and it is the will of Congress which controls the

---

[3]Petitioner does not contend that the Canadian tax is an "inheritance, legacy, or succession" tax for which a credit is allowed under sec. 2014(a). Petitioner has either conceded this issue or has failed to meet its burden of proof. Rule 142(a), Tax Court Rules of Practice and Procedure.

application of the provisions for credit. The expression of its will in legislation must be taken to conform to its own criteria unless the statute, by express language or necessary implication, makes the meaning of the phrase "paid or accrued," and hence the operation of the statute in which it occurs, depend upon its characterization by the foreign statutes and by decisions under them.

Section 131 [of the Revenue Act of 1928, which allowed a foreign income tax credit] does not say that the meaning of its words is to be determined by foreign taxing statutes and decisions, and there is nothing in its language to suggest that in allowing the credit for foreign tax payments, a shifting standard was adopted by reference to foreign characterizations and classifications of tax legislation. The phrase "income taxes paid," as used in our own revenue laws, has for most practical purposes a well understood meaning to be derived from an examination of the statutes which provide for the laying and collection of income taxes. It is that meaning which must be attributed to it as used in § 131.

[302 U.S. at 578–579; citations omitted.]

In the income tax area, in cases decided after *Biddle*, this Court and others have held that in order for a tax paid to a foreign government to be creditable under section 901, it must be the "substantial equivalent of an 'income tax' as the term is understood in the United States." See, e.g., *Commissioner v. American Metal Co.*, 221 F.2d 134, 137 (2d Cir. 1955), affg. 19 T.C. 879 (1953), and cases cited therein.

We have previously applied these principles of statutory construction, as enunciated by the Supreme Court in *Biddle*, outside of the foreign income tax credit area to decide whether the United Kingdom rates tax is a deductible foreign real property tax within the meaning of section 164(a)(1). *Waxenberg v. Commissioner*, 62 T.C. 594, 601–602 (1974). And we think that these principles are equally applicable here, in the estate tax area, in order to determine whether the taxes paid to Canada are "estate taxes." The credit provided for in section 2014(a) is for estate taxes paid to a foreign country. Congress did not express any intent in section 2014 that the foreign tax be examined under foreign law. Consequently, we must examine it under the concepts of U.S. law. Thus, in order for the tax here to qualify for the section 2014 credit, we think it must be the substantial equivalent of an "estate tax" as the term is understood in the United States.

The nature and character of an estate tax is that of an excise tax upon the privilege of transferring property of the decedent at death. *Knowlton v. Moore*, 178 U.S. 41, 56 (1900). See

*Reinecke v. Northern Trust Co.*, 278 U.S. 339, 349 (1929). In *Knowlton v. Moore, supra,* the Supreme Court traced the history of death duties and concluded as follows:

Although different modes of assessing such duties prevail, and although they have different accidental names, such as probate duties, stamp duties, taxes on the transaction, or the act of passing of an estate or a succession, legacy taxes, estate taxes or privilege taxes, nevertheless tax laws of this nature in all countries rest in their essence upon the principle that death is the generating source from which the particular taxing power takes its being and that it is the power to transmit, or the transmission from the dead to the living, on which such taxes are more immediately rested. [178 U.S. at 56.]

As understood in the United States,

The estate tax is an excise tax on the transfer of property occasioned by death. The measure of the tax is the net estate of the decedent, which is the value of the gross estate less certain statutory deductions. * * * [*Kleberg v. Commissioner*, 31 B.T.A. 95, 100 (1934).]

An examination of the Canadian statute involved in this case reveals that the Canadian tax is not the substantial equivalent of an "estate tax" as the term is understood in the United States.

Under section 70(5)(a) of the Canadian Income Tax Act, ch. 63, Can. Stat. (1970–71–72), as amended (Income Tax Act), in effect at the time of decedent's death, a decedent who died owning capital property located in Canada on the date of his death,

Shall be deemed to have disposed, immediately before his death, of each property owned by him at that time that was a capital property of the taxpayer * * * and to have received proceeds of disposition therefor equal to the fair market value of the property at that time * * *

"Capital property" is defined under section 54(b) of the Income Tax Act as follows:

(b) *"Capital property."*—"capital property" of a taxpayer means
(i) any depreciable property of the taxpayer, and
(ii) any property (other than depreciable property), any gain or loss from the disposition of which would, if the property were disposed of, be a capital gain or a capital loss, as the case may be, of the taxpayer * * *

Sections 38, 39, and 40 of the Income Tax Act provide definitions for capital gains and losses and general rules with

respect to the determination of the amount of a taxpayer's taxable gain or loss. In general, the amount of the capital gain or loss is the difference between the proceeds from disposition of the property (or fair market value of the property in the case of a deemed disposition) less the adjusted cost base of the property. Secs. 40(1) and 70(5) of the Income Tax Act. Taxable capital gain is one-half of capital gains, and allowable capital loss is one-half of capital losses, as computed above. Sec. 38 of the Income Tax Act. The difference between taxable capital gain and allowable capital loss is added to income or deducted (up to $2,000), as the case may be. Sec. 3 of the Income Tax Act.

Where nondepreciable capital property is owned by a decedent-taxpayer on December 31, 1971, the adjusted cost base of the property is determined by reference to the fair market value of the property on December 31, 1971, the date after which the Income Tax Act generally became effective. Secs. 24 to 26, Income Tax Application Rules, 1971. In general, the net effect is that a decedent is taxed only on gain accruing since December 31, 1971, and only to the extent that the gain exceeds the original cost of the property. Similarly, losses are deductible only to the extent that they have accrued after December 31, 1971, and only if they are losses compared with actual cost.

The tax imposed by Canada is not on the transfer of property nor on the power to transfer property at death. This is evidenced by the measure of the tax, which is on *gain, if any exists*. In this case, the decedent died owning the Alberta property valued at Can$1,455,000. The accrued gain on the property for Canadian tax purposes was Can$1,141,450, after subtracting the adjusted cost base of Can$313,550. Had decedent's total adjusted cost base equaled or exceeded the fair market value of the Alberta property, no tax would have been imposed. Section 70(5) of the Income Tax Act includes a provision creating a deemed disposition that may result in a taxable gain or a deductible loss. The deemed disposition is unrelated to, and independent of, the fact that property with value of the decedent is transmitted to a beneficiary. The focus of the relevant provisions of the Income Tax Act is the recognition of gain or loss, not the taxation of the transmission of property from the dead to the living. The tax paid to Canada in the instant case is not, therefore, the substantial equivalent

of an estate tax, as understood in the United States. We hold for respondent on this issue.

Petitioner contends that because the Canadian statute provides that the death of a taxpayer is the basis for assessing the tax, the tax must be an estate tax. We disagree. As previously stated, in order to be creditable, the tax must be the substantial equivalent of an "estate tax" as the term is understood in the United States. It is not enough that death is the triggering event for assessing the tax. In the Income Tax Act, death is merely the event that creates the deemed disposition and is the time at which the gain or loss is recognized for Canadian tax purposes.

Petitioners also argues that because section 2014 was enacted to prevent double taxation, the Canadian tax paid should be creditable. While it may be true that the enactment was intended to prevent double taxation, the possibility that denial of the credit may result in double taxation is not a sufficient basis for granting the credit where there is no compliance with the specific requirements of the provision granting such benefit. Allowance of a credit for foreign taxes is a privilege and the statute must be strictly construed. *Federated Mutual Implement & Hard. Ins. Co. v. Commissioner*, 266 F.2d 66, 72 (8th Cir. 1959), affg. 29 T.C. 262 (1957) (concerning the computation of the taxpayer's allowable foreign income tax credit); *Keasbey & Mattison Co. v. Rothensies*, 133 F.2d 894, 898 (3d Cir. 1943) (holding that the tax imposed by the Quebec Mining Act is not a creditable foreign income tax).

### Issue (2) Estate Tax Convention

Petitioner contends that the Canadian tax paid should be creditable under the provisions of the United States-Canada Estate Tax Convention, Feb. 17, 1961, 13 U.S.T. 382, T.I.A.S. No. 4995 (Estate Tax Convention), in effect at the time of decedent's death. Specifically, article V of the Estate Tax Convention provides, in part, as follows:

1. Where either contracting State imposes tax by reason of a decedent being domiciled therein or being a citizen thereof, that contracting State shall allow against so much of its tax (as otherwise computed) as is attributable to property situated in the other contracting State a credit (not exceeding the amount of the tax so attributable) equal to so much of the tax imposed by the other contracting State as is attributable to such property.

Respondent contends that the Canadian tax in question here is not covered by the Estate Tax Convention. We agree with respondent.

Effective April 9, 1962, the Estate Tax Convention, as stated in its preamble, was enacted for the principal purposes of "the avoidance of double taxation and the prevention of fiscal evasion with respect to taxes on the estates of deceased persons." Article I of the Estate Tax Convention specifies the taxes that are covered by the convention as follows:

> 1. The taxes referred to in this Convention are:
>   (a) for the United States of America: the Federal estate tax;
>   (b) for Canada: the estate tax imposed by the Government of Canada.
> 2. The present Convention shall also apply to any other taxes of a substantially similar character imposed by either contracting State subsequent to the date of signature of the present Convention.

Section 34 of the Canadian Estate Tax Act, ch. 29, Can. Stat. (1958), as amended (Estate Tax Act),[4] in existence in Canada at the time the Estate Tax Convention came into force, provided for the imposition of an estate tax in respect of persons domiciled outside of Canada as follows:

> (1) In the case of the death, at any time after the coming into force of this Act, of any person domiciled outside Canada at the time of his death, an estate tax shall be paid as hereinafter required upon the aggregate value of all taxable property (hereinafter in this Part referred to as the "property taxable on the death"), being property situated in Canada at the time of his death, the value of which would, if that person had been domiciled in Canada at the time of his death, be required by this Act to be included in computing the aggregate net value of the property passing on his death.
> (2) The tax payable under this Part upon the aggregate value of the property taxable on the death of any person is the tax payable as fixed by assessment or re-assessment subject to variation on objection or appeal, if any, in accordance with the provisions of Part I.

It is clear that the tax imposed under section 34 of the Estate Tax Act was an estate tax as that term is known and understood in the United States. The tax was imposed on the "aggregate value of all taxable property" situated in Canada and was similar to the U.S. estate tax. In contrast, the tax

---

[4]The Canadian statute in question in the instant case, pursuant to which petitioner paid tax to Canada, was not part of the Estate Tax Act. As part of major tax reform legislation, Canada repealed its estate tax laws with respect to decedents dying after Dec. 31, 1971. The statute in question in the instant case was enacted as part of this tax reform.

imposed under section 70(5) of the Income Tax Act in issue in the present case is a tax based on the net gain (if any) resulting from the deemed disposition of property owned by a decedent-taxpayer immediately before death. The imposition of the tax under section 70(5) of the Income Tax Act is triggered by the existence of gain, not the existence of value, as is the case with an estate tax such as the tax imposed under section 34 of the Estate Tax Act. For these reasons and for the reasons previously stated in the discussion of issue (1), the Canadian tax in issue herein is not an estate tax; consequently, it is not a tax of a "substantially similar character" to the repealed Canadian estate tax so as to be eligible for the credit under the Estate Tax Convention.

The only similarity between the income tax imposed by the Income Tax Act in the instant case and the tax eligible for the credit under the Estate Tax Convention is that both taxes may arise upon the death of a taxpayer. This fact alone does not make the tax imposed by the Income Tax Act "substantially similar" to an estate tax since it is outweighed by the lack of fundamental characteristics of an estate tax. Accordingly, we hold for respondent on this issue.

To reflect respondent's concession and our conclusions with respect to the disputed issues,

*Decision of no deficiency and no overpayment will be entered.*