FEDERATED MUTUAL IMPLEMENT AND HARDWARE INSURANCE COMPANY, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 56498, 59792.   Filed November 18, 1957.

*Nicholas S. Kiefer, Esq.*, and *Hayner N. Larson, Esq.*, for the petitioner.
*Stanley W. Ozark, Esq.*, and *George E. Van Roekel, Esq.*, for the respondent.

OPINION.

WITHEY, *Judge:* Respondent determined deficiencies in petitioner's income tax for the years and in the amounts as follows:

| Docket No. | Year | Deficiency |
|---|---|---|
| 56498 | 1948 | $10,591.98 |
| | 1949 | 31,113.16 |
| | 1950 | 52,808.42 |
| | 1951 | 64,737.78 |
| 59792 | 1952 | 150,090.51 |
| | 1953 | 72,349.64 |

The deficiencies are due primarily to the respondent's action in reducing the credit available for foreign taxes by disallowing substantial amounts in the income taxes accrued by petitioner to the Dominion of Canada during the years involved.

The issue presented for our decision concerns the proper composition of the ratio to be utilized by petitioner during 1948 through

1953, as the credit-limiting fraction provided in section 131 (b) (1) of the Internal Revenue Code of 1939.

The case was submitted upon a stipulation of facts which is hereby adopted as our findings of fact and which may be summarized as follows.

Petitioner is a corporation organized under the laws of the State of Minnesota and is authorized to transact business throughout the United States and in the Dominion of Canada. Petitioner's principal office is located at Owatonna, Minnesota. During the years 1948 through 1953, petitioner was a mutual fire and casualty insurance company subject to tax under section 207 of the 1939 Code; however, it was not an interinsurer or reciprocal underwriter within the meaning of subsection (a) (3) of that section.

Petitioner filed its Federal income tax returns for each of the years in issue with the director of internal revenue for the district of Minnesota at St. Paul, Minnesota. The returns for each year were filed on Treasury Department, Internal Revenue Service, Form 1120M. To each return was attached Treasury Department, Internal Revenue Service, Form 1118, entitled "Statement in Support of Credit Claimed by Domestic Corporation for Taxes Paid or Accrued to a Foreign Country or Possession of the United States." During each of the years here in question, petitioner kept its books and prepared its income tax returns on an accrual method of accounting. For the years 1948 and 1949, petitioner computed its income tax liability on the basis of its gross investment income and net premiums pursuant to section 207 (a) (2) of the 1939 Code. During each of the remaining years here involved, petitioner's income tax was computed on the basis of its net investment income as determined under subsections (a) (1) and (b) (4) of section 207 of the Code.

During the years in issue, the petitioner transacted business in the Dominion of Canada. However, it did not transact business in any possession of the United States or in any foreign country other than the Dominion of Canada, and it did not derive any income from such other sources.

During the years 1948 to 1953, inclusive, the petitioner accrued income taxes to the Dominion of Canada on the "underwriting profits" resulting from its Canadian business pursuant to the Income War Tax Act, the Income Tax Act, and the Old Age Security Act in effect in Canada during those years. The underwriting profits on which petitioner's Canadian income and old age security taxes were based consisted of the excess of the premiums earned in Canada, on the basis of full unearned premium reserve, over claims and expenses incurred in Canada and dividends paid to policyholders in Canada. Pursuant to the Canadian income tax regulations, no income from interest, dividends, rents, gains from the sale or exchange of capital

assets, or any other investment income was required to be included in its income tax base. No deduction for home office expenses attributable to petitioner's Canadian business was allowed. Petitioner's Canadian income and old age security taxes so accrued were for the years and in the amounts as follows:

| Year | Income tax [1] | Old age security tax [1] |
|------|------|------|
| 1948 | $18,102.73 | |
| 1949 | 45,974.12 | |
| 1950 | 75,992.44 | |
| 1951 | 64,387.49 | |
| 1952 | 154,587.43 | $6,183.49 |
| 1953 | 200,925.41 | 8,871.22 |

[1] Expressed in terms of United States money after conversion at the rate of exchange applicable at the end of each indicated year.

The foregoing income and old age security taxes accrued to the Dominion of Canada constituted income taxes accrued to a foreign country within the meaning of sections 131 and 205 of the 1939 Code.

During the years 1948 to 1953, inclusive, the underwriting profits on which the petitioner's income and old age security taxes accrued to the Dominion of Canada were based were as follows:

| Year | Taxable income [1] |
|------|------|
| 1948 | $60,645.66 |
| 1949 | 160,909.49 |
| 1950 | 240,198.01 |
| 1951 | 149,698.52 |
| 1952 | 305,756.96 |
| 1953 | 431,870.61 |

[1] Expressed in terms of Canadian money.

During the years 1948 to 1953, inclusive, the petitioner's net income from all sources as determined under section 207 (a) (1) of the 1939 Code was as follows:

| Year | Net income |
|------|------|
| 1948 | $251,125.27 |
| 1949 | 274,519.85 |
| 1950 | 304,042.62 |
| 1951 | 327,212.47 |
| 1952 | 387,363.73 |
| 1953 | 460,769.92 |

The combined corporation income tax and surtax rates applicable to mutual insurance companies taxable under section 207 of the 1939 Code were as follows for each of the years involved:

| Year | Combined tax rate (per cent) |
|------|------|
| 1948 | 38 |
| 1949 | 38 |
| 1950 | 42 |
| 1951 | 50¾ |
| 1952 | 52 |
| 1953 | 52 |

The corporation income tax rates in effect in the Dominion of Canada during the years in issue (except for lower rates on the first $10,000 of net income during the years 1949 to 1952, inclusive, and on the first $20,000 of net income in 1953) were as follows:

| Year | Tax rate (per cent) |
|---|---|
| 1948 | 30 |
| 1949 | 33 |
| 1950 | [1] 33 |
| 1950 | [2] 38 |
| 1951 | 45.6 |
| 1952 | [3] 50 |
| 1953 | [3] 47 |

[1] To September 1.
[2] After September 1.
[3] Plus 2 per cent old age security tax.

Petitioner's gross income realized during the years in issue from dividends, rents, and gains from the sale or exchange of capital assets to the extent provided under section 117 of the 1939 Code, together with its investment expenses, real estate expenses exclusive of taxes, depreciation, taxes, interest paid or accrued, and capital losses, was as follows:

| | 1948 | | 1949 | | 1950 | |
|---|---|---|---|---|---|---|
| | Canadian sources | All sources | Canadian sources | All sources | Canadian sources | All sources |
| Dividends | (1) | (1) | (1) | (1) | (1) | $2,116.37 |
| Rents | (1) | $3,326.96 | (1) | $9,190.96 | (1) | 13,181.00 |
| Capital gains | (1) | (1) | (1) | 13,883.57 | (1) | (1) |
| | (1) | 3,326.96 | (1) | 23,074.53 | (1) | 15,297.37 |
| Investment expenses | $2,163.10 | 29,802.16 | $4,145.49 | 35,222.54 | $5,207.13 | 40,341.97 |
| Real estate expenses | (1) | 1,759.24 | (1) | 3,402.25 | (1) | 1,515.56 |
| Depreciation | (1) | 565.88 | (1) | 2,256.64 | (1) | 4,005.58 |
| Taxes | (1) | 559.06 | (1) | 523.57 | (1) | 3,358.23 |
| Interest paid or accrued | (1) | (1) | (1) | (1) | (1) | (1) |
| Capital losses | (1) | (1) | (1) | (1) | (1) | (1) |
| | (2,163.10) | (32,686.34) | (4,145.49) | (41,405.00) | (5,207.13) | (49,221.34) |

| | 1951 | | 1952 | | 1953 | |
|---|---|---|---|---|---|---|
| | Canadian sources | All sources | Canadian sources | All sources | Canadian sources | All sources |
| Dividends | (1) | $17,721.00 | (1) | $16,278.50 | (1) | $19,167.50 |
| Rents | (1) | 13,172.50 | (1) | 33,071.03 | (1) | 34,654.79 |
| Capital gains | (1) | (1) | (1) | (1) | (1) | (1) |
| | (1) | 30,893.50 | (1) | 49,349.53 | (1) | 53,822.29 |
| Investment expenses | $7,515.91 | 43,420.46 | $9,782.37 | 46,249.05 | $10,408.06 | 47,976.68 |
| Real estate expenses | (1) | 2,024.93 | (1) | 10,907.10 | (1) | 12,251.88 |
| Depreciation | (1) | 4,096.76 | (1) | 6,573.05 | (1) | 6,506.62 |
| Taxes | (1) | 3,427.96 | (1) | 4,290.85 | (1) | 6,044.03 |
| Interest paid or accrued | (1) | (1) | (1) | (1) | (1) | (1) |
| Capital losses | (1) | (1) | (1) | (1) | (1) | (1) |
| | (7,515.91) | (52,790.11) | (9,782.37) | (68,020.05) | (10,408.06) | (72,755.21) |

[1] None.

Petitioner's gross interest as determined by respondent within the meaning of section 207 (b) (1) of the Code, the amount of interest excluded from gross income under section 22 (b) (4) of the Code, and its credits as provided in section 26 of the Code for each of the years in issue are as follows:

| | 1948 | | 1949 | | 1950 | |
|---|---|---|---|---|---|---|
| | Canadian sources | All sources | Canadian sources | All sources | Canadian sources | All sources |
| Dominion of Canada, bonds__ | $14,521.53 | $14,521.53 | $31,129.19 | $31,129.19 | $41,717.67 | $41,717.67 |
| Canadian railroads, bonds____ | 6,656.80 | 6,656.80 | 5,823.89 | 5,823.89 | 5,425.21 | 5,425.21 |
| Canadian provinces, bonds___ | (1) | (1) | 492.20 | 492.20 | 1,261.86 | 1,261.86 |
| Municipals, bonds_____ | (1) | (1) | (1) | (1) | (1) | (1) |
| All United States bonds_____ | (1) | 270,606.29 | (1) | 276,780.76 | (1) | 326,608.13 |
| | 21,178.33 | 291,784.62 | 37,445.28 | 318,156.70 | 48,404.74 | 375,012.87 |
| Less: | | | | | | |
| United States tax-exempt bonds _____ | (1) | 10,927.96 | (1) | 25,306.38 | (1) | 35,147.37 |
| United States partially exempt bonds_____ | (1) | 372.01 | (1) | 200.00 | (1) | 100.00 |
| Dividend received credit__ | (1) | (1) | (1) | (1) | (1) | 1,798.91 |
| | (1) | (11,299.97) | (1) | (25,506.38) | (1) | (37,046.28) |

| | 1951 | | 1952 | | 1953 | |
|---|---|---|---|---|---|---|
| | Canadian sources | All sources | Canadian sources | All sources | Canadian sources | All sources |
| Dominion of Canada, bonds__ | $49,822.77 | $49,822.77 | $58,978.92 | $58,978.92 | $75,530.72 | $75,530.72 |
| Canadian railroads, bonds____ | 5,640.70 | 5,640.70 | 5,858.23 | 5,858.23 | 5,806.40 | 5,806.40 |
| Canadian provinces, bonds___ | 9,651.11 | 9,651.11 | 22,890.19 | 22,890.19 | 25,917.27 | 25,917.27 |
| Municipals, bonds_____ | 989.66 | 989.66 | 4,524.80 | 4,524.80 | 4,505.60 | 4,505.60 |
| All United States bonds_____ | (1) | 333,978.72 | (1) | 364,896.04 | (1) | 426,660.45 |
| | 66,104.24 | 400,082.96 | 92,252.17 | 457,148.18 | 111,759.99 | 538,420.44 |
| Less: | | | | | | |
| United States tax-exempt bonds_____ | (1) | 35,911.03 | (1) | 37,277.21 | (1) | 42,425.23 |
| United States partially exempt bonds_____ | (1) | (1) | (1) | (1) | (1) | (1) |
| Dividend received credit__ | (1) | 15,062.85 | (1) | 13,836.72 | (1) | 16,292.37 |
| | (1) | (50,973.88) | (1) | (51,113.93) | (1) | (58,717.60) |

1 None.

Petitioner claimed foreign tax credits on its income tax returns for each of the years in question as follows:

| Year | Credits claimed |
|---|---|
| 1948 | $18,193.70 |
| 1949 | 45,720.12 |
| 1950 | 71,353.65 |
| 1951 | 65,162.43 |
| 1952 | 148,665.05 |
| 1953 | 71,171.78 |

Petitioner now claims overpayments of income tax for the years 1948 through 1953, in unspecified amounts. The petitioner now asserts that

its allowable foreign tax credits for the years in issue should be as follows:

| Year | Credits asserted |
|------|------------------|
| 1948 | $18, 102. 72 |
| 1949 | 45, 974. 12 |
| 1950 | 75, 992. 44 |
| 1951 | 64, 387. 49 |
| 1952 | 160, 770. 92 |
| 1953 | 209, 796. 62 |

The respondent has determined that petitioner is entitled to foreign tax credits for Canadian taxes for the years and in the amounts as follows:

| Year | Amount |
|------|--------|
| 1948 | $7, 545. 07 |
| 1949 | 12, 893. 67 |
| 1950 | 17, 470. 69 |
| 1951 | (¹) |
| 1952 | (¹) |
| 1953 | 350. 00 |

¹ None.

On stipulation the respondent has conceded that petitioner is entitled to credits for foreign taxes for the years and in the amounts as follows:

| Year | Amount |
|------|--------|
| 1951 | $28, 748. 81 |
| 1952 | 41, 713. 31 |
| 1953 | 51, 492. 95 |

Section 205 [1] of the 1939 Code provides that the income taxes imposed by foreign countries shall be allowed as a credit against the income tax of a domestic insurance company taxable under section 201, 204, or 207, to the extent provided in section 131.

Section 131 (b) [2] of the 1939 Code prescribes two limitations on the amount of foreign taxes allowable as a credit against the United States

---

[1] SEC. 205. TAXES OF FOREIGN COUNTRIES AND POSSESSIONS OF UNITED STATES.

The amount of income, war-profits, and excess-profits taxes imposed by foreign countries or possessions of the United States shall be allowed as a credit against the tax of a domestic insurance company subject to the tax imposed by section 201, 204, or 207, to the extent provided in the case of a domestic corporation in section 131, and in the case of the tax imposed by section 201 or 204 "net income" as used in section 131 means the net income as defined in this Supplement.

[2] SEC. 131. TAXES OF FOREIGN COUNTRIES AND POSSESSIONS OF UNITED STATES.

(b) LIMIT ON CREDIT.—The amount of the credit taken under this section shall be subject to each of the following limitations:

(1) The amount of the credit in respect of the tax paid or accrued to any country shall not exceed, in the case of a taxpayer other than a corporation, the same proportion of the tax against which such credit is taken, which the taxpayer's net income

tax, a per-country limitation and an over-all limitation. Only the per-country limitation contained in subsection (b) (1) is in issue here. Section 131 (b) (1) limits the credit for foreign taxes to an amount not in excess of the proportion of the United States tax which the taxpayer's normal tax net income from sources within a foreign country bears to his entire normal tax net income. Thus, the petitioner's normal tax net income from sources outside the United States becomes the numerator of the credit-limiting fraction and its entire normal tax net income becomes the denominator.

The issue presented for our decision relates solely to the proper amounts to be utilized in the numerator of the limitation fraction.

The petitioner has taken the position that the term "normal-tax net income" as used in section 131 (b) (1) includes its underwriting profits and all other income subject to Canadian tax during the years in issue. Consequently, petitioner maintains that the numerator of the credit-limiting ratio prescribed in section 131 (b) (1) must include all of its net income (as that term is defined by Canadian law) realized from Canadian sources which were subjected to tax by the Dominion of Canada.

The respondent calls to our attention the definition of "net income" contained in section 207 (b) (4) of the Code, and contends that the term "normal-tax net income" in section 131 (b) (1), when applied to mutual insurance companies taxable under section 207, must be restricted to the concept of net income described in section 207 (b) (4).

Under section 207 of the Code,[3] mutual insurance companies are taxable on whichever of the following two bases produces the greater tax: (1) The net income taxable at regular corporate normal and surtax rates, or (2) the sum of the gross income from investments and net premiums, less dividends to policyholders and exempt interest, taxable at 1 per cent.

---

from sources within such country bears to his entire net income for the same taxable year, or in the case of a corporation, the same proportion of the tax against which such credit is taken, which the taxpayer's normal-tax net income from sources within such country bears to its entire normal-tax net income for the same taxable year; and

(2) The total amount of the credit shall not exceed, in the case of a taxpayer other than a corporation, the same proportion of the tax against which such credit is taken, which the taxpayer's net income from sources without the United States bears to his entire net income for the same taxable year, or, in the case of a corporation, the same proportion of the tax against which such credit is taken, which the taxpayer's normal-tax net income from sources without the United States bears to its entire normal-tax net income for the same taxable year * * *

[3] SEC. 207. MUTUAL INSURANCE COMPANIES OTHER THAN LIFE OR MARINE.
(a) IMPOSITION OF TAX.—There shall be levied, collected, and paid for each taxable year upon the income of every mutual insurance company (other than a life or a marine insurance company or a fire insurance company subject to the tax imposed by section 204 and other than an interinsurer or reciprocal underwriter) a tax computed under paragraph (1) or paragraph (2) whichever is the greater and upon the income of every mutual

During 4 of the 6 years here in issue, petitioner's United States income tax was paid on the basis of its net income under section 207 (a) (1). For purposes of determining the net income under that section, a definition of the net income of mutual insurance companies, describing it strictly in terms of net *investment* income, is found in section 207 (b) (4):

---

insurance company (other than a life or a marine insurance company or a fire insurance company subject to the tax imposed by section 204) which is an interinsurer or reciprocal underwriter, a tax computed under paragraph (3):

(1) If the corporation surtax net income is over $3,000 a tax computed as follows:

(A) Normal Tax.—A normal tax on the normal-tax net income, computed at the rates provided in section 13 or section 14 (b), or 30 per centum of the amount by which the normal-tax net income exceeds $3,000, whichever is the lesser; plus

(B) Surtax.—A surtax on the corporation surtax net income, computed at the rates provided in section 15 (b) except that if the corporation surtax net income is not more than $6,000 the surtax shall be 12 per centum of the amount by which the corporation surtax net income exceeds $3,000.

(2) If for the taxable year the gross amount of income from interest, dividends, rents, and net premiums, minus dividends to policyholders, minus the interest which under section 22 (b) (4) is excluded from gross income, exceeds $75,000 a tax equal to the excess of—

(A) 1 per centum of the amounts so computed or 2 per centum of the excess of the amount so computed over $75,000, whichever is the lesser, over

(B) the amount of the tax imposed under Subchapter E of Chapter 2.

For the year 1950 subsection (a) (1) was amended to read as follows:

(a) (1) If the corporation surtax net income is over $3,000 a tax computed as follows:

(A) Taxable Years Beginning After June 30, 1950.—In the case of taxable years beginning after June 30, 1950—

(i) Normal tax.—A normal tax on the normal-tax net income, computed at the rate provided in section 13 (b) (1), or 50 per centum of the amount by which the normal-tax net income exceeds $3,000, whichever is the lesser; plus

(ii) Surtax.—A surtax on the corporation surtax net income, computed as provided in section 15 (b) (1).

(B) Calendar Year 1950.—In the case of a taxable year beginning on January 1, 1950, and ending on December 31, 1950—

(i) Normal tax.—A normal tax on the normal-tax net income, computed at the rate provided in section 13 (b) (2), or 46 per centum of the amount by which the normal-tax net income exceeds $3,000, whichever is the lesser; plus

(ii) Surtax.—A surtax on the corporation surtax net income, computed as provided in section 15 (b) (2).

For the years 1951, 1952, and 1953, subsection (a) (1) was amended to read as follows:

(a) (1) If the corporation surtax net income is over $3,000 a tax computed as follows:

(A) Taxable Years Beginning After December 31, 1950, and Before April 1, 1951.—In the case of taxable years beginning after December 31, 1950, and before April 1, 1951, and ending after March 31, 1951—

(i) Normal tax.—A normal tax of 28¾ per centum of the normal-tax net income, or 57½ per centum of the amount by which the normal-tax net income exceeds $3,000, whichever is the lesser; plus

(ii) Surtax.—A surtax of 22 per centum of the corporation surtax net income in excess of $25,000.

(B) Taxable Years Beginning After March 31, 1951, and Before April 1, 1954.—In the case of taxable years beginning after March 31, 1951, and before April 1, 1954—

(i) Normal tax.—A normal tax of 30 per centum of the normal-tax net income, or 60 per centum of the amount by which the normal-tax net income exceeds $3,000, whichever is the lesser; plus

(ii) Surtax.—A surtax of 22 per centum of the corporation surtax net income in excess of $25,000.

SEC. 207. MUTUAL INSURANCE COMPANIES OTHER THAN LIFE OR MARINE.

(b) DEFINITION OF INCOME, ETC.—In the case of an insurance company subject to the tax imposed by this section—

\* \* \* \* \* \* \*

(4) NET INCOME.—The term "net income" means the gross investment income less—

(A) Tax-free Interest—The amount of interest which under section 22 (b) (4) is excluded for the taxable year from gross income;

(B) Investment Expenses.—Investment expenses paid or accrued during the taxable year. \* \* \*

(C) Real Estate Expenses.—Taxes and other expenses paid or accrued during the taxable year exclusively upon or with respect to the real estate owned by the company \* \* \*

(D) Depreciation.—A reasonable allowance, as provided in section 23 (1), for the exhaustion, wear and tear of property, including a reasonable allowance for obsolescence;

(E) Interest Paid or Accrued.—All interest paid or accrued within the taxable year on indebtedness, except on indebtedness incurred or continued to purchase or carry obligations (other than obligations of the United States issued after September 24, 1917, and originally subscribed for by the taxpayer) the interest upon which is wholly exempt from taxation under this chapter.

(F) Capital Losses.—Capital losses to the extent provided in section 117 \* \* \*

Accordingly, the proper tax base to be utilized by mutual insurance companies in the computation of their normal tax and surtax liabilities under section 207 (a) (1) is net investment income as defined in section 207 (b) (4), rather than the concept of net income applicable to corporations generally and defined in sections 21 (a) and 13 (a) of the 1939 Code.

During 1948 and 1949, petitioner's United States income tax liability was computed on the basis of its gross income from investments and net premiums under section 207 (a) (2).

During all 6 of the years in question, petitioner accrued Canadian income taxes based only on its underwriting profits, taxed at the regular corporation income tax rates applicable in Canada. The underwriting profits of petitioner taxable in Canada consisted of the excess of the premiums earned in Canada over the claims and expenses incurred in Canada and the dividends paid to Canadian policyholders. The home office expenses of petitioner attributable to Canadian business were not deductible in computing its Canadian income tax base. Pursuant to the income tax regulations promulgated by the Dominion of Canada, petitioner was not required to include its income from investments in its taxable income.

The parties have stipulated that the Canadian taxes accrued by petitioner on its underwriting profits during the years here involved constitute income taxes within the meaning of sections 131 and 205 of the 1939 Code.

The parties agree (petitioner by its pleading and respondent by his notice of deficiency) that the denominator should consist of petitioner's entire net investment income as defined under section 207 (b) (4).

We are mindful of the fact that the denominator agreed upon by the parties does not include all of the net income (net premiums) taxed during 1948 and 1949. Nevertheless, the parties by their agreement with respect to the composition of the denominator have taken from us the consideration of that fact. They have agreed that the denominator with respect to 1948 and 1949 is to be computed on the basis of investment income only under section 207 (b) (4). Because of that agreement, we must conclude that the numerator for those years should consist of the same class of income as the denominator, and it therefore follows that respondent's computation of the numerator, as being that portion of Canadian income which is net investment income, is correct and we must find for the respondent with respect to those years.

With respect to the years 1950 through 1953, we must come to the same conclusion. In doing so we are again mindful of our decision in *L. Helena Wilson*, 7 T. C. 1469. It might be argued upon the basis of that case that petitioner would be entitled to no credit for the latter 4 years because during those years there was no double taxation of the same income. Because respondent has nevertheless stipulated certain credits for those years, we assume the Commissioner does not seriously contend that the petitioner is entitled to no credit for those years on the theory that there was no double taxation of the same income, although in Canada the only income taxed was net premiums, while in the United States, the tax having been levied on the basis of section 207 (a) (1) of the Code, the only income taxed was investment income. See also *American Chicle Co. v. United States*, 316 U. S. 450; *Gentsch v. Goodyear Tire & Rubber Co.*, 151 F. 2d 997; H. Rept. No. 767, 65th Cong., 2d Sess. (1918), p. 31. Because petitioner by its pleadings agrees that respondent's computation of the denominator is to include only Canadian income from investments, we are again forced to the conclusion that the numerator must consist of the same class of income, i. e., Canadian receipts from investments which constitute income under section 207 (a) (1).

*Decisions will be entered under Rule 50.*