Ingolf MOTLAND, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. 916.

United States District Court
N. D. Iowa, E. D.
March 28, 1961.

Ingolf Motland, pro se.

F. E. Van Alstine, U. S. Dist. Atty., William R. Crary, Asst. U. S. Dist. Atty., Sioux City, Iowa, and Bruce S. Lane, Trial Atty., Tax Div., Dept. of Justice, Washington, D. C., for defendant.

GRAVEN, District Judge.

This action was brought by the plaintiff for the purpose of recovering the individual income taxes paid to the defendant for the 1952 taxable year. Such

taxes totaled $727.22. Plaintiff alleges that the Internal Revenue Service erred in the method which it used for computing the credit allowed for taxes paid to foreign governments during the same taxable year. It is plaintiff's position that if such credit had been properly computed the credit would have more than offset the tax otherwise owed.

There is no disagreement as to the relevant facts in the case. In 1952 the plaintiff received a gross amount of $103,235 as the result of the liquidation of the Carribean Sugar Company of Havana, Cuba, a corporation in which he had owned stock for a period in excess of six months. Plaintiff's recognized gain from this transaction for Federal income tax purposes was $22,299.86. Of the total proceeds received by the plaintiff from the liquidation, $44,275 represented accrued dividends. The Cuban government levied a 6% tax on these accrued dividends in the amount of $2,656.50, which the plaintiff paid. Shortly thereafter, the plaintiff removed the $103,235 proceeds from Cuba to the United States and the Cuban government levied a 2% export tax on that entire sum. Thus, the taxes paid by the plaintiff to the Cuban government during the 1952 taxable year were as follows:

| | |
|---|---|
| 6% tax on the accrued dividends | $2,656.50 |
| 2% export tax on the gross amount received from the liquidation | $2,064.70 |
| Total taxes paid to the Cuban government | $4,721.20 |

On his 1952 Federal income tax return, the plaintiff claimed a credit of $4,721.20 for foreign income taxes paid. In a subsequent audit of that return, the Internal Revenue Service determined that the 2% export tax was not an income tax within the meaning of Section 131(a) (1) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 131(a) (1) and, therefore, a credit was not allowed for the payment of that tax to the Cuban government. The plaintiff was allowed, however, to claim the full amount of that tax as a deduction under Section 23(c) of the Code, 26 U.S.C.A. § 23(c). In regard to the $2,656.50 paid to the Cuban government as a tax on the accrued dividends, the Internal Revenue Service determined that the tax in question was an income tax for which a credit was allowable under Section 131(a) (1) of the Internal Revenue Code of 1939, but that Section 131(b) (1) of the Code placed a limit on the amount of the credit. Under the limiting formula contained in Section 131(b) (1), the Internal Revenue Service computed the maximum credit for the Cuban income tax as $2,400.77. Plaintiff objects to both the disallowance of any credit for the 2% export tax and the limitation placed upon the credit allowed for the 6% Cuban income tax. The latter dispute involves a determination of the meaning of the term "net income" as used in Section 131(b) (1) of the Internal Revenue Code of 1939.

Plaintiff's claim as to the status of the 2% tax imposed upon the funds removed from Cuba will first be considered. Section 131(a) (1) of the Internal Revenue Code of 1939 provides that a credit may be taken against income taxes owed the Federal government for " * * * the amount of any *income, war-profits, and excess-profits taxes* paid or accrued during the taxable year to any foreign country * * *." (Emphasis supplied.) In addition, Section 131(h) of the Code provides:

> "For the purposes of this section * * * the term 'income, war-profits, and excess-profits taxes' shall include a tax paid in lieu of a tax upon income, war-profits, or excess-profits otherwise generally imposed by any foreign country * * *."

Plaintiff, in his Federal income tax return, claimed a credit for the full amount of the 2% export tax on the theory that it was an income tax. In the present action, he is apparently claiming only a portion of that tax to be an income tax for which a credit should be allowed. It is his theory that $44,275 of the $103,235 exported had constituted

income within the scope of the Cuban income tax laws and that, therefore, the 2% export tax levied on this sum was an additional tax on "income" and thus was itself an income tax. The defendant maintains that the 2% tax in question is an excise tax on the privilege of removing capital from the country.

█ It is well settled that in the application of Section 131(a) (1) the criteria prescribed by our own revenue laws and court decisions control the meaning of the words "income taxes" as used therein and the label placed upon the tax by a foreign taxing authority does not determine whether it is an income tax or an excise tax. Biddle v. Commissioner, 1938, 302 U.S. 573, 58 S.Ct. 379, 82 L.Ed. 431; New York & Honduras Rosario Mining Co. v. Commissioner, 2 Cir., 1948, 168 F.2d 745, 747, 12 A.L.R.2d 355; Keasbey & Mattison Co. v. Rothensies, 3 Cir., 1943, 133 F.2d 894, 897, certiorari denied, 1943, 320 U.S. 739, 64 S.Ct. 39, 88 L.Ed. 438; Irving Air Chute Co. v. Commissioner, 2 Cir., 1944, 143 F.2d 256, 259, certiorari denied, 1944, 323 U.S. 773, 65 S.Ct. 134, 89 L.Ed. 618; L. Helena Wilson, 1946, 7 T.C. 1469, 1471. In Biddle v. Commissioner, supra, the United States Supreme Court had to determine whether certain items which American stockholders in British corporations were required to report as income on their British income tax returns could be considered in determining income taxes paid to a foreign country for purposes of Section 131(a) (1) of the Revenue Act of 1928. The pertinent provisions of Section 131(a) (1) in that Act were substantially the same as they appear in the Internal Revenue Code of 1939. There the Court stated (302 U.S. at pages 578–579, 58 S.Ct. at page 381):

"Section 131 does not say that the meaning of its words is to be determined by foreign taxing statutes and decisions, and there is nothing in its language to suggest that, in allowing the credit for foreign tax payments, a shifting standard was adopted by reference to foreign characterization and classifications of tax legislation. The phrase 'income taxes paid,' as used in our own revenue laws, has for most practical purposes a well understood meaning to be derived from an examination of the statutes which provide for the laying and collection of income taxes. It is that meaning which must be attributed to it as used in section 131."

In Keasbey & Mattison Co. v. Rothensies, supra, the Court of Appeals for the Third Circuit had before it the question of whether or not a tax paid to the Province of Quebec was an income tax within the meaning of Section 131(a) (1) of the Internal Revenue Code of 1936 which was identical to the provision here under construction. The Court pointed out that, under the holding in the Biddle case, the criteria prescribed by our revenue laws are controlling in the characterization of a foreign tax. The Court then proceeded to set forth some of the commonly accepted elements of an income tax as such tax exists in this country. The Court stated in this regard (133 F.2d at page 897):

"* * * These commonly accepted criteria, although not defined in the statute, may be easily ascertained. It is clear from a reading of the Act, as well as the revenue acts which preceded it, and the cases interpretive of its provisions, that *an income tax is a direct tax upon income* as therein defined. * * * [Cases cited.] *The defined concept of income has been uniformly restricted to a gain realized or a profit derived from capital, labor, or both.* Section 22(a) of the Internal Revenue Act of 1936. [Cases cited.] It seems logical to conclude that any tax, if it is to qualify as a tax on income within the meaning of Section 131(a) (1), is subject to the same basic restrictions. The Supreme Court, without advancing any precise definition of the term 'income tax', has unmistakably determined that *taxes imposed on subjects other than income, e. g.,*

*franchises, privileges, etc., are not income taxes, although measured on the basis of income.* [Cases cited.] These criteria are determinative of the nature of the tax in question." (Emphasis supplied.)

The tax imposed by the Province of Quebec was labeled by that government as a tax on "annual profits." It was levied upon mine operators on the basis of the gross value of the output of their mines. The expenses incident to the general conduct of the business were not deductible for purposes of computing the tax. Because the tax was levied directly upon the value of the output of the mines without regard to realization of gain or derivation of profit, the Court held that it was not an income tax but rather an excise tax levied upon the privilege of mining.

In the case of Commissioner v. American Metal Co., 2 Cir., 1955, 221 F.2d 134, the issue was whether metal production taxes paid to the Mexican government could be considered as income taxes for which a foreign tax credit might be taken. The tax in question was imposed on the basis of the amount of ore extracted from Mexican mines. The operator of the mine was subject to the tax even though the ore was never sold or any profit realized on the mining operation. The Court held that this was clearly not an income tax but rather a tax upon the privilege of extracting ore. In the case of New York & Honduras Rosario Mining Co. v. Commissioner, 2 Cir., 1948, 168 F.2d 745, 12 A.L.R.2d 355, the issue also concerned a mining tax. The tax in that case was paid to the Honduran government and was based not on the value of minerals mined, but on the amount received in the sale of such minerals less the operating expenses within Honduras and expenses abroad properly allocable to the Honduran operations. The tax in that case was held to be an income tax for which a credit was allowable. Cases involving the question of whether a foreign tax is an income tax or an excise tax are collected in 12 A.L.R.2d 359 (1950); and 134 A.L.R. 1433 (1941).

■ ■ It is the claim of the plaintiff in the present case that a tax falling upon exported income is necessarily an income tax. Although the foreign legislation imposing the 2% tax does not appear in the record, both parties, in argument, portray that tax as one which falls indiscriminately upon all capital removed from Cuba regardless of whether it is derived from earnings, gift, bequest, or some other means. It also appears that realization of capital which does constitute income and is subject to the Cuban income tax is not subject to the 2% tax if it is not removed from the country. This clearly demonstrates that such a tax is not a direct tax on income but rather that it is a tax upon the exportation of capital. This situation seems at least analogous to the mining cases where taxes levied upon gross receipts or gross output were held not to be income taxes. Certainly in those cases, if income were in fact realized on the mining operation, that income would feel the burden of the privilege tax. This does not change the fact that it is the privilege which is taxed and not the income.

Plaintiff contends that even if it is determined that the 2% export tax is not itself an income tax, it properly qualifies as a tax imposed in lieu of an income tax under the provisions of Section 131(h) heretofore set forth. In this regard, plaintiff urges that it was the intent of Congress to extend the scope of the allowable credit to taxes other than income taxes, war-profits taxes, and excess-profits taxes. The legislative history of Section 131(h) and the Court decisions interpreting it fail to support plaintiff's view.

Subsection (h) of Section 131 was added to the Internal Revenue Code of 1939 by an amendment in 1942, 56 Stat. 856 et seq., 893. The purpose to be served by the amendment may be seen by examining the report of the Senate Finance Committee accompanying the measure.

S.Rep. No. 1631, 77th Cong., 2d Sess., pp. 131-32, provides, in part:

"Your committee believes further amendments should be made in section 131. Under that section as it now stands, a credit is allowed against United States tax for income, war profits or excess profits taxes paid or accrued to any foreign country or to any possession of the United States. In the interpretation of the term income tax, the Commissioner, the Board, and the courts have consistently adhered to a concept of income tax rather closely related to our own, and if such foreign tax was not imposed upon a basis corresponding approximately to net income it was not recognized as a basis for such credit. Thus if a foreign country in imposing income taxation authorized, *for reasons growing out of the administrative difficulties of determining net income or taxable basis within that country,* a United States domestic corporation doing business in such country to pay a tax in lieu of such income tax but measured, for example, by gross income, gross sales or a number of units produced within the country, such tax has not heretofore been recognized as a basis for a credit. Your committee has deemed it desirable to extend the scope of this section. Accordingly, subsection (f) of section 160 provides that the term 'income, war profits and excess profits taxes' shall, for the purposes of sections 131 and 23(c) (1), include a tax paid by a domestic taxpayer in lieu of the tax upon income, war profits and excess profits taxes which would otherwise be imposed upon such taxpayer by any foreign country or by any possession of the United States. The limitation upon the amount of the credit will, of course, continue to apply, so that it will be allowed only if and to the extent the taxpayer has net income from sources within the foreign country or from sources without the United States, as the case may be." (Emphasis supplied.)

Similarly, the applicable treasury regulations for Section 131(h) of the Internal Revenue Code of 1939, Treas.Reg. 39.131 (h)-1(b), provide, in part:

"(b) For the purposes of sections 131 and 23(c) (1) (C), the term 'income, war-profits, and excess-profits taxes' includes a tax imposed by statute or decree by a foreign country or by a possession of the United States if (1) such country or possession has in force a general income tax law, (2) the taxpayer claiming the credit would, in the absence of a specific provision applicable to such taxpayer, be subject to such general income tax, and (3) such general income tax is not imposed upon the taxpayer thus subject to such substituted tax. For example, the A Corporation does business in the X country, which imposes an income tax upon substantially a net income base. *The ascertainment of net income, though not the determination of gross income, from sources in X country is found administratively difficult.* The X country, by decree, provides that corporations circumstanced as was the A Corporation would, in lieu of the income tax at the rate of 20 percent otherwise payable, be subject to tax at the rate of 10 percent upon the amount of gross income from X country. In accordance with such decree, the A Corporation paid X country the sum of $25,000 in 1953 with respect to its tax liability to the X country for the year 1952. Such amount, subject to the applicable limitations, is available as a credit to the A Corporation as foreign income, war-profits, or excess-profits taxes against the United States tax liability for the year 1952." (Emphasis supplied.)

It can be seen from the foregoing that the purpose of Section 131(h) is to allow a foreign tax credit for a foreign tax which, although not strictly a tax on net income, is imposed as a substitute for a

tax on net income because the ascertainment of net income is administratively difficult. As the statute itself indicates, it must be in lieu of an income tax "otherwise generally imposed." In the case of Northwestern Mutual Fire Association v. Commissioner, 9 Cir., 1950, 181 F.2d 133, the Court had to determine whether a Canadian tax imposed upon a mutual insurance company on the basis of "net premiums" was a tax in lieu of an income tax for which a credit might be allowed. The Court reviewed the problems which had existed in this country in regard to the taxing of mutual insurance companies and which resulted in taxing them on the basis of "net premiums" rather than trying to determine "net income." The Court concluded that the Canadian tax in question was an attempt to solve the same problem and was a tax imposed in lieu of an income tax in order to avoid administrative difficulties. For a further example of a tax held to be in lieu of an income tax, see Compania Embotelladora Coca-Cola, S. A. v. United States, 1956, 139 F.Supp. 953, 134 Ct.Cl. 723.

In the present case, the Cuban 2% export tax is in no way a substitute for the Cuban income tax that is generally imposed. The plaintiff was liable for the full amount of that tax even though he also paid the export tax. The two taxes appear to be in no way related. It is the holding of the Court that the Cuban 2% export tax is neither an income tax nor a tax in lieu of an income tax and that no foreign tax credit is allowable for the payment of such tax.

It remains to be determined whether the defendant correctly applied the limiting formula contained in Section 131(b)(1) of the Internal Revenue Code of 1939 in determining the maximum credit to be allowed for the Cuban income tax paid by the plaintiff on the accrued dividends. Section 131(b)(1) provides, in part, as follows:

"*Limit on credit.* The amount of the credit taken under this section shall be subject to * * * the following limitations:

"(1) The amount of the credit in respect of the tax paid or accrued to any country shall not exceed, in the case of a taxpayer other than a corporation, the same proportion of the tax against which such credit is taken, which the taxpayer's *net income* from sources within such country bears to his entire *net income* for the same taxable year, * * * *"* (Emphasis supplied.)

A discussion of the history and purposes of the limitation seems desirable. The provision for a credit for foreign income taxes paid first appeared in Section 238 of the Revenue Act of 1918, 40 Stat. 1080. As explained in Burnet v. Chicago Portrait Co., 1932, 285 U.S. 1, 7, 52 S.Ct. 275, 76 L.Ed. 587, the purpose of the provision was to mitigate the evil of duplicate taxation of income derived from foreign sources. See also Federated Mutual Implement & Hardware Insurance Co. v. Commissioner, 8 Cir., 1959, 266 F.2d 66, 69; Commissioner v. American Metal Co., 2 Cir., 1955, 221 F.2d 134, 137. Congress, when it created this foreign tax credit in 1918, placed no limitation upon the amount of the credit. The only restriction involved concerned the type of foreign tax for which a credit might be claimed and a taxpayer who had paid foreign taxes of the type specified in the Act might take a credit against United States income taxes for the full amount of such foreign taxes paid. It may easily be seen that, in such a situation, if foreign tax rates exceeded the domestic rates they would, in effect, build up a credit for the taxpayer which might be applied against the tax on income derived solely from domestic sources. See Federated Mutual Implement & Hardware Insurance Co. v. Commissioner, 8 Cir., 1959, 266 F.2d 66, 70; Gentsch v. Goodyear Tire & Rubber Co., 6 Cir., 1945, 151 F.2d 997, 999. In order to remedy this situation, Congress enacted the limiting formula now found in Section 131(b) of the Internal Revenue Code of 1939. That limitation first appeared as part of the Revenue Act of 1921, ch. 136, Secs. 222, 238, 42 Stat. 227.

In addition to the per country limitation contained in Section 131(b) (1), heretofore set forth, Section 131(b) (2) contains an overall limitation based upon a ratio of total foreign net income to total net income from all sources. The present case involves only the application of the per country limitation to the Cuban income taxes paid by the plaintiff.

The limiting formula provided in Section 131(b) (1) may most readily be expressed in the form of a fraction. The composition of this limiting fraction was well explained by the Board of Tax Appeals in the case of I. B. Dexter, 1942, 47 B.T.A. 285, at page 290, wherein the Board stated:

"The language of subsection (b) (1) limits the credit to an amount not in excess of the same proportion of the tax against which the credit is taken which the taxpayer's net income from sources within a foreign country or possession bears to his entire net income. *The taxpayer's net income from said sources outside the United States becomes the numerator and his entire net income becomes the denominator of the fraction used in determining the proportion set forth in the section.* * * * That is, assuming that a taxpayer's income tax under Title I of the revenue act is $1,000; that his net income from sources outside the United States is $5,000; and that his entire net income is $10,000, the [maximum] credit under section 131(a) (1), limited by subsection (b) (1), is computed by taking one-half of $1,000, the tax against which the credit is taken. The [maximum] amount of the credit is $500. If the entire net income * * * and the [net] income from sources outside the United States are the same, both being $10,000, the [maximum] amount of the credit is 100 percent of the tax against which the credit is taken, or $1,000. * *" (Emphasis supplied.)

The present disagreement concerns the income to be included in the numerator of the limiting fraction. The precise issue is whether the phrase "net income from sources within such [foreign] country," refers, as defendant urges, to "net income" as that term is defined in Section 21(a) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 21(a) and generally used throughout the Code. Under the definition contained in Section 21(a), "net income" means "gross income" less all allowable deductions. Jones v. Whittington, 10 Cir., 1952, 194 F.2d 812, 816. It is the figure to which the tax rate is applied in order to determine the tax owed in the absence of any credits. Under the provisions of Sections 23(ee) and 117(b) of the Code, 26 U.S.C.A. §§ 23(ee), 117(b), there is an allowable deduction for 50% of any net long-term capital gains. The gain realized by the plaintiff from the liquidation of the Cuban sugar corporation in the amount of $22,299.86 was a long-term capital gain and, therefore, if only "net income" as defined in Section 21(a) is to be included in the numerator of the limiting fraction, then only one-half of the gain or $11,149.93 would properly be includable (reduced possibly by *other* applicable deductions). It was on this basis that the Internal Revenue Service computed the limitation which was applied to the foreign tax credit claimed by the plaintiff.

It is the claim of the plaintiff that the phrase "net income," as it is used in the numerator of the limiting fraction, means "net income" in the standard accounting sense and that, therefore, the entire gain should be included in the numerator of the limiting fraction. This would have the effect of substantially increasing the foreign tax credit to which plaintiff would be entitled. Plaintiff tries to support this position with the argument that the tax treatment afforded capital gains under the Code is designed to tax the entire gain at one-half the regular rate. He urges that the fact that this is done by first allowing a deduction of 50% of the net long-term capital gain and then applying the regu-

lar rate is solely to save time and effort in computing the tax one owes.

 Some support for plaintiff's argument might be found in the fact that for many years "net income," as defined by the various revenue acts, did include the full amount of net long-term capital gains and any special treatment afforded to that class of income was achieved by applying different tax rates to ordinary income and income from capital gains. See White v. Atkins, 1 Cir., 1934, 69 F.2d 960, 961–962; Simon v. Hoey, D.C.1949, 88 F.Supp. 754, 759. The method employed in the Internal Revenue Code of 1939, whereby the tax advantage is offered by means of allowing a 50% deduction of long-term capital gains from net income, was enacted October 20, 1951, 65 Stat. 497. This, of course, was long after the enactment (in 1921) of the provision for limiting the foreign tax credit. In spite of this, it is the view of the Court that it must be presumed that Congress, in weaving the statutory pattern for the taxation of long-term capital gains, realized the interrelationship between the method employed and other provisions of the revenue laws. Section 21(a) contains a precise definition of "net income," a phrase which is used generally throughout the body of the Code. Where the statutory definition of a word is given, in a statutory compilation employing that word throughout, that definition must prevail. In the case of Fox v. Standard Oil Co. of New Jersey, 1935, 294 U.S. 87, 95–96, 55 S.Ct. 333, 79 L.Ed. 780, the issue before the Court was the meaning of the word "store," as that word appeared in a state revenue statute. The state statute in question had contained a definition of terms which included a definition of the word "store." It was urged that the Court should adopt a definition in accord with the popular understanding of the word "store" rather than to follow the statutory definition. In rejecting this argument, the Court stated (294 U.S. at pages 95–96, 55 S.Ct. at page 336):

"* * * There might be force in this suggestion if the statute had left the meaning of its terms to the test of popular understanding. Instead, it has attempted to secure precision and certainty by rejecting a test so fluid and indeterminate and supplying its own glossary. * * In such circumstances definition by the average man or even by the ordinary dictionary with its studied enumeration of subtle shades of meaning is not a substitute for the definition set before us by the lawmakers with instructions to apply it to the exclusion of all others. * * * There would be little use in such a glossary if we were free in despite of it to choose a meaning for ourselves."

See also United States v. West View Grain Co., D.C.N.D.Iowa 1960, 189 F. Supp. 482, 489, and cases therein cited.

The conclusion that "net income," as used in Section 131(b) (1), should be strictly confined to the meaning given to that phrase in the computation of United States income taxes is also strongly borne out when the purpose of the limiting formula is considered. As heretofore discussed, in the absence of any limitation on the foreign tax credit, the domestic revenue would suffer to the extent that the foreign tax rate exceeds the domestic rate. It is equally obvious that, even if the domestic and foreign tax rates are the same, loss of domestic revenue would nonetheless occur if the foreign tax base to which the rates are applied is larger than the domestic tax base. The limiting formula in Section 131(b) (1) attempts to guard against both of these situations by limiting the credit to that fraction of the United States tax represented by the ratio of net (taxable) income from the foreign source (as computed under the United States revenue laws) to the net (taxable) income from all sources (as computed under the United States revenue laws). Simply stated, the provision operates entirely independently of either the foreign tax rate or tax base and has the objective of limiting the foreign tax credit

to that portion of the United States tax owed which is attributable to the foreign income. Unless only that portion of the foreign income which is actually taxed under our revenue laws is included in the limiting formula, it will not accurately reflect this intended objective.

The effect of including in the limiting formula of Section 131(b) (1) income figures other than amounts actually subject to the domestic income tax may be illustrated with figures from the present case. A proper determination of the limiting fraction would be as follows:

| | | |
|---|---|---|
| Capital gain on liquidation | | $22,299.86 |
| Less deductions | | |
| 50% capital gain deduction | $11,149.93 | |
| Deduction for Cuban export tax paid | 2,064.70 | 13,214.63 |
| Amount of Cuban income subject to U. S. tax | | 9,085.23 |
| Income from all sources subject to U. S. tax | | 12,723.07 |
| Portion of U. S. tax actually attributable to Cuban income | | $\dfrac{9,085.23}{\$12,723.07} = .714$ |

If the entire amount of the capital gain were to be included in the limiting fraction, the ratio would be $20,235.16 [1]/_{23,873.00}$ [2] or .847. This would inaccurately reflect the amount of the United States tax attributable to the Cuban income by .133.

The preceding discussion has assumed that any increase in the "net income" figure from a foreign source used in the numerator of the limiting fraction would necessarily result in an identical increase in "net income" from all sources contained in the denominator of the fraction. It is seen that even though both numerator and denominator are increased by the same amount, the fraction does not accurately reflect the desired proportion when the figures are not based strictly on net (taxable) income under the United States revenue laws. Plaintiff's position is even more extreme than the above example in that he seeks to have the entire capital gain included in the numerator of the limiting fraction and yet in no way quarrels with the fact that only 50% of that gain was included in the denominator. Plaintiff's net income from all sources for the 1952 taxable year amounted to $12,723.07 and this was the denominator in the fraction employed by the Internal Revenue Service in computing plaintiff's foreign tax credit. Although all of the component parts of this $12,723.07 do not appear in the record, it is obvious that the full amount of the plaintiff's realized gain on the liquidation of the sugar company was not included because the entire gain amounted to $22,299.86. At most, only slightly more than 50% of that gain could have been included, and it seems fair to infer that only 50% of it was included. It is obvious that if the proportion adopted by Congress in the limiting formula is to accurately reflect the relationship between net (taxable) income from a foreign source and net (taxable) income from all sources, the same concept of "net income" must be employed in both the numerator and the denominator of the limiting formula.

In the case of Federated Mutual Implement & Hardware Insurance Co. v.

1. $22,299.86 less $2,064.70.

2. $12,723.07 plus $11,149.93.

Commissioner, 8 Cir., 1959, 266 F.2d 66, affirming, 1957, 29 T.C. 262, the major issue concerned the composition of the numerator to be employed in the limiting formula of Section 131(b) (1) of the Internal Revenue Code of 1939. The taxpayer was a mutual insurance company which was taxed on its income in both the United States and Canada. Under the United States revenue statutes the taxpayer was taxed on the basis of either net income at regular corporate rates or net investment income at a rate of 1%, whichever method produced the higher tax. The litigation involved foreign tax credits claimed for each of six consecutive taxable years. During two of those taxable years the taxpayer was taxed on the basis of net income at regular rates and during four of those taxable years he was taxed by the other method. In computing the limitation on the foreign tax credit for those years, it was stipulated between the parties that the denominator of the limiting fraction was to be determined on the basis of net investment income for each of the six years although the taxpayer had only been taxed on that basis for four of those years. The Tax Court held that the numerator for each year must necessarily consist of the same class of income as the denominator or the proportion would be meaningless. The Court stated (29 T.C. at page 271):

> " * * * They [the parties] have agreed that the denominator with respect to 1948 and 1949 is to be computed on the basis of investment income only * * *. Because of that agreement, we must conclude that *the numerator for those years should consist of the same class of income as the denominator*, and it therefore follows that respondent's computation of the numerator * * is correct * * *." (Emphasis supplied.)

In affirming the Tax Court, the Court of Appeals for this Circuit stated (266 F.2d at page 71):

> "Despite the unusual factual situation existing here, we cannot subscribe to the view that literal application of § 131(b) defeats the purpose for which it was enacted. As to the years 1950–1953, when petitioner was taxed upon the net investment income base, no logical contention may be made that, with net investment income as the denominator, the numerator may vary in kind."

■ It is the view of the Court that both the plain meaning of Section 131 (b) (1) and the purpose for which it was enacted require that the phrase "net income" as used in that Section be interpreted to mean net income subject to tax under the other provisions of the Code.

The case of Helvering v. Campbell, 4 Cir., 1944, 139 F.2d 865, relied upon by the plaintiff, is not in point. In that case the taxpayer's only source of income was from the Philippine Islands. Thus, the ratio of net income from foreign sources to net income from all sources was 1/1, or, in other words, there was no limit on the credit allowable for foreign income taxes paid. The case involved no dispute over the application of Section 131(b). The Commissioner sought, in spite of this, to limit the credit because some of the items of income taxed by the Philippine government were not subject to tax under United States Revenue laws. The holding of the case was that the only limit on the foreign tax credit provided by Congress is that contained in Section 131(b). For similar cases, see L. Helena Wilson, 1946, 7 T.C. 1469; I. B. Dexter, 1942, 47 B.T.A. 285.

It is the holding of the Court that the Internal Revenue Service was correct both in denying plaintiff any credit for the 2% Cuban export tax and in the method it employed in limiting his credit for the Cuban income taxes paid. It is hereby ordered that judgment shall be entered in favor of the defendant.

It is further ordered that under the provisions of Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. the foregoing opinion shall constitute the findings of fact and the conclusions of law herein.